IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | * | |
| KEMPES JEAN | | Bankruptcy No. 20-10883-LSS |
| LORI LEE JEAN | * | (Chapter 7) |
|     Debtors | | |
| * * * | | |

**TRUSTEE'S OPPOSITION TO DEBTORS'** *MOTION TO RESOLVE WHY DEBTORS' RETENTION OF SUCCESSOR COUNSEL SHOULD BE BARRED BY 11 U.S.C. § 549 OR OTHERWISE (AND REQUEST FOR HEARING)*

TO THE HONORABLE LORI S. SIMPSON, BANKRUPTCY JUDGE:

COMES NOW, Gary A. Rosen, Trustee, by and through his undersigned counsel, Schlossberg Mastro & Scanlan, and in support of his *Trustee's Opposition to Debtors' Motion to Resolve Why Debtors' Retention of Successor Counsel Should be Barred by 11 U.S.C. § 549 or Otherwise* (the "*Burns Motion*"), hereby respectfully represents as follows:

**Background of Proceedings and Pending Dispute**

1. As review of the docket of these proceedings will reveal, the Debtors were represented in the filing of their Voluntary Petition (Docket No. 1) herein by Sari Kurland, Esquire. That representation of the Debtors by Ms. Kurland continued until June 10, 2021, when John Burns, Esquire entered his appearance and Ms. Kurland withdrew from representation of the Debtors. (Docket Nos. 190, 192).

2. On the date of his entry into these proceedings, Mr. Burns filed his *Disclosure of Compensation of Attorney for Debtor* (Docket No. 191) noting his prior receipt as a retainer of the sum of $45,000.00 paid to him on the Debtors' behalf by Jose Mario Regalado Padilla, as to $35,000 thereof, and by James Pazzanese, as to the balance of $10,000. Five days later, on June 15, 2021, Mr. Burns filed his awkwardly-yclept *Motion to Resolve Why Debtors' Retention of*

*Successor Counsel Should be Barred by 11 U.S.C. § 549 or Otherwise (And Request for Hearing)* (Docket No. 195; the "*Burns Motion*") seeking extraordinary relief in respect of that retainer.

3. By said *Burns Motion*, Mr. Burns asserted that the retainer paid to him as aforesaid was not property of the estate recoverable under the provisions of § 549(a) of the Code[1] and that a "…prompt determination on evidence – now and not later – should be conducted on whether the retainer received by (Burns) is property of the estate". *Burns Motion*, ¶ 37.

4. Observing that a substantive response to the *Burns Motion* (which commenced a contested matter under Bankruptcy Rule 9014) was not required unless requested by the Court, (per the provisions of Rule 9014(a)) and concerned that the Court might inadvertently routinely enter an Order approving the same prior to the Trustee's expression of his substantive opposition to the same, the Trustee filed on June 29, 2021 his *Line Advising of Trustee's Intent to Contest Debtors' Motion to Resolve Why Debtors' Retention of Successor Counsel Should be Barred by 11 U.S.C. § 549 or Otherwise* (Docket No. 199) placing all parties and the Court on notice of his opposition to the relief sought in the *Burns Motion*.

5. On July 12, 2021, this Court entered its *Order and Notice Directing Trustee to Respond to and Setting Hearing on Motion to Resolve* (Docket No. 206) setting a hearing on the *Burns Motion* and requiring that the Trustee "file a written response to the Motion to Resolve detailing the bases (or expected bases) for his opposition to the requested relief" by a date certain. By consent of the parties, that relief thereafter was modified to accommodate scheduling conflicts of the parties by this Court's *Order* dated July 13, 2021 (Docket No. 208) scheduling said hearing for August 12, 2021 and requiring the filing of the instant Opposition by not later than July 26, 2021.

---

[1] All references herein to the "Bankruptcy Code", the "Code" or "§ ____" are to the provisions of the United States Bankruptcy Code codified as 11 U.S.C. § 101, *et seq*.

\\dcf01\home\JKemmerer\2021\07.2021\opposition to burns motion.rs.072621.FINAL.docx

**Expected Bases of Trustee's Opposition to
Relief Requested in *Burns Motion***

6. By the instant *Opposition*, the Trustee first acknowledges that the efforts of Mr. Burns to date on behalf of the Debtors have returned to these proceedings a welcome degree of professional decorum and quality in connection with the representation of the Debtors herein. As observed by the Trustee and his counsel in their interactions with Mr. Burns, his actions in advancing the interests of his client have been timely, attentive, well-considered and focused. While Mr. Burns has not abandoned zealous advocacy, and his customary pugnacious approach in dealing with the adversaries of his clients is undiminished, Mr. Burns clearly has familiarized himself with the procedural and substantive history of this case including the role of his clients and their prior counsel in reaching the present juncture.

7. Appropriately sensitive to the allegations of misconduct, obstruction and obfuscation which are replete in the record of this cause and, perhaps more importantly, in the United States Trustee's *Complaint to Revoke Discharge* now pending in Adversary Proceeding No. 21-00106, Mr. Burns successfully sought in the first weeks of his tenure to lower the temperature of the relations between the Trustee and the Debtors, and their respective counsel. Those efforts bore immediate success as the Trustee and his counsel, together with Mr. Burns, jointly navigated the shoals of a difficult, but ultimately uneventful, removal of the Debtors from their former residence to permit the timely closing of the Trustee's Court-approved sale of that improved real property.

8. Further, the Trustee was pleased to engage with Mr. Burns in nascent negotiations seeking to achieve a global compromise and settlement of the Trustee's numerous claims against the Debtors arising from their patent non-disclosure and active concealment of significant assets abetted by their perjurious sworn filings and false testimony under oath regarding the same.

Although those once-promising negotiations now appear to have foundered, the Trustee is appreciative of Mr. Burns' practical and professional approach to the same.

9. Notwithstanding the Trustee's genuine admiration for Mr. Burns' sensible and professional conduct, which arrived as an unexpected breath of fresh air in this difficult case, the Trustee nevertheless finds Mr. Burns' request for relief in the *Burns Motion* to be breathtaking and audacious in its breadth and fundamental precept.

10. By the *Burns Motion*, Mr. Burns seeks the entry of an immediate and pre-emptive Order by this Court which is contrary to the express language of the Bankruptcy Code and in contravention of the orderly avoidance and recovery scheme carefully crafted by Congress in Chapter 5 of the Bankruptcy Code.[2] As adopted and implemented in the Bankruptcy Reform Act of 1978 – and as now in effect for almost a half-century – Congress established in § 546(a)(1) of the Code a two-year statute of limitations for the initiation by the Trustee of actions to avoid pre-petition avoidable transfers as well as a separate two-year statute of limitations with respect to post-petition unauthorized transfers under § 549(d) of the Code. As thereafter clarified by amendments in the Bankruptcy Reform Act of 1994, that limitations period under § 546(a)(1) commenced in the instant case as to pre-petition transfers on the date of the Order for Relief (January 22, 2020), and therefore requires the initiation of adversary proceedings to avoid such pre-petition transfers by not later than January 22, 2022 – nearly six (6) months hence. As for post-petition unauthorized transfers, § 549(d) establishes a separate two-year period of limitations

---

[2] Although Mr. Burns has focused his entire argument and requested relief in the *Burns Motion* on an assertion that the retainer paid to him by Messrs. Padilla and Pazzanese is not property of the estate and therefore is neither avoidable nor recoverable under § 549(a), the Trustee hastens to note that his concerns with regard to the provenance of the retainer paid to Mr. Burns are not limited to such a narrow analysis. Indeed, as hereinafter explicated, while the Trustee observes that the Debtors' prior malefactions appear to have included post-petition transfers of property of the estate, the panoply of the Debtors' misdeeds in no way have been limited to unauthorized post-petition transactions avoidable under § 549, but include also various improper actions properly subject to investigation and attack as pre-petition transfers avoidable under other provisions of Chapter 5 of the Code.

measured from the date of such transfers within which the Trustee may commence adversary proceedings to recover the same; as such, any transfers by the Debtors hereafter discovered which taint the purity of the alleged gifts by Messrs. Padilla and Pazzanese will be subject to avoidance actions by the Trustee for two years after the date thereof. Further, assuming the subsequent entry of an avoidance order in such adversary proceedings, Congress established under § 550(f)(1) of the Code a separate one-year period of limitations from the date of such order of avoidance during which the Trustee may commence separate actions to recover those avoided transfers from the immediate and mediate transferees thereof.

11. In the instant case, the filing of the *Burns Motion* acknowledges, explicitly or implicitly, the impact of the Debtors' prior conduct revealed by the Trustee's as yet still-incomplete investigations[3] establishing the Debtors' proclivity for manipulation of their funds and other assets through an array of confederates and clandestine entities to obscure the true ownership by the Debtors of the same. In light of those actions which have denied to the Debtors' creditors

---

[3] This Court will recall that after the Trustee learned in late June, 2020 of the existence of Mrs. Jean's surrogacy agreement and Mr. Jean's interest in 4511 Dix St, LLC (which assets the Debtors failed to disclose in their original *Schedules*), the Debtors attempted to evade the Rule 2004 examinations sought by the Trustee. Not only was the Trustee required to obtain a court order compelling the Debtors' attendance at the Rule 2004 exams (*see* Docket No. 66), but he then also was obliged to take the extraordinary step of requesting a body attachment of the Debtors under Rule 2005 to secure their attendance at the examinations. (*See* Docket No. 68). Adding insult to injury, just six (6) days after the Debtors' counsel responded to this Court's *Order to Show Cause* with feigned assurances of cooperation with the Trustee, (*see* Docket No. 72), the Debtors moved to convert this case to Chapter 13 in an attempt to avoid the Trustee altogether. (*See* Docket No. 74).

Following this Court's denial of the motion to convert (based on this Court's finding that the Debtors' bad faith made them ineligible to be debtors under Chapter 13), (*see* Docket Nos. 100, 108), the Debtors then declined timely to respond to the Trustee's request for the production of documents related to the Trustee's desired topics of examination at the Rule 2004 inquiry. After the Trustee filed another motion to compel, (*see* Docket No. 123), the Debtors produced some documents but improperly withheld post-petition financial records and other documents causing the Trustee to return to the Court to obtain an order compelling the Debtors to turn over such records and information. (*See* Docket No. 139). Finally, the Trustee was able to commence the Rule 2004 examinations of the Debtors on March 16, 2021. During the following examination of Kempes Jean, however, it became apparent that the Debtors had made an incomplete production and Mr. Jean's examination was continued until April 13, 2021 where the Trustee learned for the first time that Mr. Jean was a party to two pre-petition leases of commercial property (one as lessee, the other as sublessor) that were not disclosed on his *Amended Schedules*. This and other issues related to the Debtors' continuing lack of candor caused the Rule 2004 examination of Mr. Jean to be continued once again. To date, the Trustee has been able to complete only about one-half of the seven hours allotted for examination of Mr. Jean as a result of the near-constant obstruction and failed cooperation of the Debtors.

the benefit of those assets, the *Burns Motion* is directed to assuaging the Trustee's and this Court's perfectly reasonable wariness as to the provenance of the $45,000.00 retainer paid to Mr. Burns and asserted by the Debtor and his counsel to be "gifts" from friends and benefactors. Conscious of those concerns and anxious not to be exposed to the indignity of having the source of his retainer be subject to future investigation and possible avoidance and recovery by the Trustee during the statutory periods prescribed by § 549(d) (as well, presumably, as those periods specified by the aforesaid provisions of §§ 546 and 550 not mentioned in the *Burns Motion*), Mr. Burns requests this Court to inoculate and protect him from such risk by requiring that the Trustee immediately drop all other activities and forthwith, and for all time, "put up or shut up" with regard to his concerns regarding the provenance of the retainer paid to Mr. Burns.

12. While the Trustee is sensitive and sympathetic to Mr. Burns' professional quandary, the relief which he seeks by the *Burns Motion* flies in the face of the Bankruptcy Code and simply is beyond the authority of this Court to grant.

**The Prior Actions of the Debtors, Both Pre and Post-Petition Demonstrate Their Proclivity for Nefarious Manipulation of Their Funds and Assets Sufficient to Raise Significant Question as to the Provenance of the Retainer Paid to Mr. Burns**

13. The Debtors' demonstrated proclivity for manipulation and affirmative concealment of their funds and other assets, bolstered by perjurious sworn filings and false testimony under oath, is illustrated by the Landgreen Street transaction recently uncovered by the Trustee (and which is a subject of the United States Trustee's *Complaint to Revoke Discharge*).

14. In their sworn *Amended Schedules* and *Statement of Financial Affairs* (Docket Nos. 116-117) filed herein on February 7, 2021, the Debtors did not disclose Kempes Jean's 100% ownership interest in 4112 Landgreen St, LLC ("the Landgreen LLC"), notwithstanding that this single-member LLC was formed by Mr. Jean just seven (7) weeks prior to the Petition Date and

acquired title to the property located at 4112 Landgreen Street in Rockville, Maryland ("the Landgreen Property") a mere **_eight (8) days_** before the Debtors commenced this bankruptcy case. As additional evidence of the intention of the Debtors to conceal the ownership and activities of that enterprise, Mr. Jean subsequently falsely testified under oath on two separate occasions during his Rule 2004 examination herein that all his membership interests had been disclosed on the *Amended Schedules* and that there existed no other business interests of either debtor that had not been disclosed previously to the Trustee.

15. The Trustee learned of the Landgreen Street transaction only through happenstance when he noticed a wire transfer into Mr. Jean's individual Bank of America account (No. xxxx3807) on July 15, 2020 in the amount of $49,798.00 with the description "Seller Proceeds 4112 Landgreen Street Rockville MD 20853."[4] Further inquiry by the Trustee into the Landgreen Street transaction as hereinafter detailed raises substantial question as to whether Mr. Jean has secreted additional assets in connection with the same – all of which said assets would have been available to fund, in whole or in part, directly or indirectly, the retainer paid to Mr. Burns.

16. The HUD-1 Settlement Statement for the Landgreen LLC's pre-petition acquisition of the Landgreen Property on January 14, 2020 (a copy of which is attached hereto as **_Exhibit 1_**) recites that the buyer (Landgreen LLC) required cash at closing of $88,328.11 to settle on the Landgreen Property. Notwithstanding the request of the Trustee for complete information and documentation on the subject, the Debtor has failed to provide any information explaining how Landgreen LLC – a single member LLC wholly-owned by Mr. Jean – delivered **_$88,328.11 in_**

---

[4] The Trustee notes that the Debtors, through their prior counsel, initially objected to producing post-petition bank records, asserting a purported lack of relevance. This Court, however, entered an *Order* on March 5, 2021 (Docket No. 139) compelling the Debtors to produce, *inter alia*, such bank records, which led to the Trustee's discovery of the Landgreen LLC.

***cash*** to satisfy its closing obligation just ***eight (8) days*** before Mr. Jean commenced the instant Chapter 7 case.

17. The ALTA Settlement Statement for Landgreen LLC's post-petition sale of the Landgreen Property on July 15, 2020 (a copy of which is attached hereto as ***Exhibit 2***) recites that the net proceeds of $148,741.33 are due to the seller (Landgreen LLC) at closing. Further, a document signed by Mr. Jean titled "Agreement as to the Distribution of Proceeds" (a copy of which is attached hereto as ***Exhibit 3***) purports to authorize the distribution of more than one-third of those net settlement proceeds, or $49,798.22, to Kempes Jean with the balance of $99,498.11 payable to "William G. Warren." Despite the critical importance of the role of the said William G. Warren in this clandestine transaction, no information has been provided to the Trustee identifying Mr. Warren and no evidence – competent or otherwise – has been provided to the Trustee confirming the fact of that remittance or the purported justification therefor.

18. Although prior counsel to the Debtors represented to the Trustee that all relevant documents regarding the Landgreen Street transaction had been turned over, such obviously is not the case. In the absence of the same, and given Mr. Jean's history of concealment and false oaths in this case, it is entirely possible that William G. Warren is a mere strawman in the Landgreen transaction who has been used to hide the proceeds of Landgreen Street transaction. Further entirely possible in the context of the prior demonstrated conduct of the Debtors, William G. Warren may not exist other than as a fictitious alter ago of Mr. Jean by which the Debtors have concealed the receipt of those sums attributed to Mr. Warren.

19. Further evidence of the manipulations undertaken by the Debtors which challenge blind acceptance of the assertion of untainted provenance of the monies utilized to fund payment of the retainer to Mr. Burns is found in the Closing Disclosure for the sale of the Landgreen

Property (a copy of which is attached hereto as **Exhibit 4**). That Closing Disclosure indicates that Mario Padilla – presumably the same Jose Mario Padilla who "gifted" $35,000.00 to Mr. Jean to pay the bulk of Mr. Burns' retainer – was the real estate broker for Landgreen LLC and received a commission of $12,500.00 in the transaction. While even that sum reportedly paid to Mr. Padilla in the off-the-books Landgreen transaction is caused for raised eyebrows and heightened scrutiny, prior counsel to the Debtors informed the Trustee that Mr. Padilla further was reimbursed an additional sum of approximately $10,000.00 from the $49,780.00 that was distributed to Mr. Jean for services and work allegedly provided by or paid for by Mr. Padilla in connection with the Landgreen project. Unsurprisingly, no competent evidence has been provided to the Trustee establishing the provision of or payment by Mr. Padilla for such work and services, nor has any competent evidence been provided that any agreement existed for the same between Mr. Padilla and Landgreen LLC and/or Mr. Jean.

20. Given Mr. Padilla's intimate connection to the Landgreen Street transaction, the Trustee cannot rule out at this point in time: (i) that all or some of the funds purportedly tendered to Mr. Burns by Mr. Padilla are, in whole or in part, property of the bankruptcy estate; (ii) that Mr. Padilla is an immediate or mediate transferee of a voidable transfer subject to avoidance and recovery by the Trustee; or (iii) perhaps more importantly in the context of the instant *Burns Motion*, that Mr. Burns may be a mediate transferee of such a voidable transfer subject to avoidance and recovery by the Trustee.

21. Further, given the complexities of the Landgreen Street transaction and the Debtors' patent history of non-disclosure, obstruction and obfuscation with the Court and the Trustee, the Trustee submits that it is unreasonable and contrary to the letter of the Bankruptcy Code to require the Trustee to unravel the Debtors' deliberately confused and obtuse financial affairs, including

those related to the Landgreen Street transaction, on an expedited basis in response to the *Burns Motion* as opposed to the more deliberate statutory deadlines established by §§ 546, 549 and 550 of the Bankruptcy Code.

22. The Trustee further observes that in a letter previously provided by the Debtors' former counsel on June 2, 2021, Mr. Jean stated that he "would like to explain where the funds [for his settlement offer] are coming from." *See* Letter from Kempes Jean attached hereto as **Exhibit 5**. Mr. Jean represents in his letter that he and his wife "have a gift of $150,000 from a family friend [Leonardo Johnson] upon the sale of his townhome which is currently under contract." Mr. Jean further states that an another $35,000 is coming from funds in his bank account which allegedly are attributable to his post-petition earnings, and an additional $20,000 has been "saved from the surrogacy contract" that the Debtors initially failed to disclose on their original *Schedules*. Finally, Mr. Jean represents that "[a]nother $20,000 is a gift from Kempes Jean's brother, David Jean, and the last $25,000 is a gift from Steven Graham, also a family friend."[5]

23. Assuming the truth of Mr. Jean's representations, the Debtors had received $45,000 in "gifts" from David Jean and Steven Graham, and had another $35,000 saved from alleged post-petition earnings as of June 2, 2021[6] – just eight (8) days before Mr. Burns entered his appearance herein and filed his *Disclosure of Compensation for Attorney for Debtor*. Thus, it is unclear to the Trustee why the Debtors would have needed the funds for Mr. Burns' retainer to be gifted to them

---

[5] According to Mr. Jean's testimony at his Rule 2004 exam, the Debtors stayed at Mr. Graham's luxury apartment in Beverly Hills, California while on a family vacation in February 2021 during which Mr. Jean admitted to spending over $3,000 at a Gucci store in Beverly Hills on Valentine's Day gifts for his wife. Mr. Jean later testified that Mr. Graham "gifted" him the airplane tickets to take his family to California. Mr. Jean also attempted to explain his purchase at the Gucci store in Beverly Hills (and another purchase of over $1,800 he made at a Gucci store in Washington, D.C. in December 2020) by testifying that Mr. Graham gave him cash to cover the cost of these purchases.

[6] The sale of Leonardo Johnson's townhome was not scheduled to close until June 17, 2021 according to the sales contract provided by Debtors' former counsel.

\\dcf01\home\JKemmerer\2021\07.2021\opposition to burns motion.rs.072621.FINAL.docx

– *<u>from two different individuals</u>* – when it appears that they already had sufficient funds on hand based on Mr. Jean's letter.

24. Further, a close examination of the contract for the sale of Leonardo Johnson's townhome, which was provided to the Trustee by the Debtors' former counsel, reveals that Mr. Johnson's agent as seller in that transaction was none other than Mario Padilla. *See* Residential Contract of Sale, attached hereto as ***Exhibit 6***. While it may or may not be coincidence that Mr. Padilla again is involved in another Jean-related transaction through which gifts to the Debtors are facilitated, the coincidence of the same appropriately has exacerbated the Trustee's chariness with respect to the claims of purity as to the ultimate source and provenance of the funds by which the retainer to Mr. Burns has been paid.

**Conclusion**

25. As hereinabove explicated, the relief sought by Mr. Burns is breathtaking in its scope requesting this Court to disregard multiple provisions of the Bankruptcy Code created by Congress to ensure the deliberate and complete discharge of the duties of the Trustee. While the Trustee has no quarrel with the Debtors' decision to engage Mr. Burns as their counsel and applauds their choice as a salutary act which has enhanced the quality of their representation and has sharpened the focus of these proceedings, the Trustee objects vociferously to the suggestion that the *quid pro quo* for Mr. Burns' welcome presence in these proceedings is the required dismantling and disregard of the statutory scheme carefully crafted by Congress with respect to the investigation and prosecution by the Trustee of actions to avoid and recover avoidable or unauthorized transfers made by the Debtors. By all means, the Debtors are entitled to their own choice as to the best representation available to them; however, that choice is one made at their expense and not at the risk and expense of their creditors and requiring the derogation of the Bankruptcy Code.

26. In consideration of the foregoing and for such other reasons as may be presented upon the hearing of this cause, the undersigned Trustee urges that this Court should reject all pleas for relief set forth by Mr. Burns in the *Burns Motion*.

WHEREFORE, Gary A. Rosen, Chapter 7 Trustee respectfully prays that this Honorable Court:

1. SUSTAIN the Trustee's Opposition to the *Burns Motion.*

2. DENY the *Burns Motion.*

3. ORDER such other and further relief as the nature of this cause and the interests of justice may require.

Respectfully Submitted,

*/s/ Roger Schlossberg*
Frank J. Mastro #24679
Roger Schlossberg
Schlossberg Mastro & Scanlan
P.O. Box 2067
Hagerstown, MD 21742-2067
(301) 739-8610
fmastro@schlosslaw.com
rschlossberg@schlosslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of July, 2021, a copy of the *Trustee's Opposition to Debtors' Motion to Resolve why Debtors' Retention of Successor Counsel Should be Barred by 11 U.S.C. § 549 or Otherwise (and Request for Hearing)* together with Exhibits and proposed *Order* was sent to all of the parties listed on the attached CMECF MailList (via electronic mail to those individuals listed on the Electronic Mail Notice List and via first-class mail postage prepaid to those individuals listed on the Manual Notice List) as follows:

James Cochran
J.G. Cochran Auctioneers and Associates
7704 Mapleville Rd.
Boonsboro, MD 21713

Nurit Coombe
Re/Max Elite Service
6101 Executive Blvd.
Suite 230 North
Bethesda, MD 20852

Synchrony Bank
c/o PRA Receivables Management, LLC PO Box 41021
Norfolk, VA 23541

                                                         */s/ Roger Schlossberg*
                                                         Roger Schlossberg